UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHADONIE PAYLOR, | |
| Plaintiff, | |
| v. | No. 1:22-cv-03359 (JEB) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

Plaintiff, Shadonie Paylor, through her counsel Lawrence Manley and the Law Office of Lawrence Manley & Associates, LLC, hereby moves to oppose the Motion Defendants Officer Caleb Demeritt, and Officer Corbin Seward (collectively, Defendants) for summary judgment under Fed. R. Civ. P. 56(c) on Plaintiff's constitutional claim of excessive force against them.  A memorandum of points and authorities in support of this motion, a statement of disputed material facts, exhibits, and a proposed order are attached for the Court's consideration.

Date: January 5, 2024

Respectfully submitted,

LAW OFFICE LAWRENCE MANLEY & ASSOCIATES, LLC

  /s/ Lawrence B. Manley
Lawrence B. Manley, Bar #: 379702
2026 32nd Street, SE
Washington, DC 20020
202-256-4524/ 240-414-1120 (Fax)
lmanley@lmanleylaw.com
Counsel to Shadonie Paylor

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHADONIE PAYLOR, | |
| Plaintiff, | |
| v. | No. 1:22-cv-03359 (JEB) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of January 2024, a true copy of the Opposition to Defendants' Motion for Summary Judgment, Statement of Undisputed Material Facts, Memorandum of Law and proposed Order was electronically filed, through which notification of such filing will be sent to all counsel of record who have registered with the electronic filing service for this matter.

/s/ Lawrence Manley
Lawrence B. Manley, Bar No. 379702

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHADONIE PAYLOR, | |
| **Plaintiff,** | |
| v. | No. 1:22-cv-03359 (JEB) |
| DISTRICT OF COLUMBIA, *et al.,* | |
| **Defendants.** | |

## PLAINTIFFS' STATEMENT OF DISPUTED MATERIAL FACTS

Plaintiff, Shadonie Paylor, by and through her counsel Lawrence B. Manley and the Law Office of Lawrence Manley & Associates, LLC, submit this statement of disputed facts,

1.     On August 20, 2019, at 2704 Brue Place SE, Washington DC, Metropolitan Police Department (MPD) Officers Caleb Demeritt, and Corbin Seward were investigating a traffic crime involving two individuals when Officer Seward observed an individual, later identified as Dalonta Holliway, smoking a marijuana cigarette. *See* Exhibit 1, Aug. 20, 2019, Paylor Arrest Report. ***Undisputed***

2.     While Officers Seward and Demeritt placed Holliway under arrest, Officer Joshua Jarvie arrived on the scene and told a man in a gray shirt, who was later identified as Dominique Burley, to back up; Burley refused to comply and swatted Officer Seward's hand away. *See* Ex. 1; Exhibit 2, Officer Jarvie Body Worn Camera (BWC) Footage (Jarvie BWC)

4

02:55–03:13.; Exhibit 3, Officer Corbin Seward Body Worn Camera (BWC) Footage
(Seward BWC) 03:35–04:03.

_**Disputed:**_    The police officers were the aggressors in dealing with citizen onlookers.
Mr. Burley was an onlooker.  Officer Demeritt approached him, shoved him, pushed him,
and told him to back up. *Def Ex. 3, Seward BWC 03:46-4:03.*  Ms. Paylor, standing next
to Mr. Burley, was recording the officers.  Officer Jarvie enters the scene and pushes Ms.
Paylor into Mr. Burley. *See Def* Ex. 2, Jarvie BWC 3:07- 312; *Pl. Ex. 1 Declaration of
Shadonie Paylor, Paylor Decl.*  ¶ 7.

3.     Officer Jarvie then attempted to place Burley under arrest for assaulting a police
officer and Plaintiff Shadonie Paylor, who was wearing a black shirt with "PINK" written
on the front, and other unidentified individuals began pulling Officer Jarvie's arm to
prevent him from handcuffing Burley and tried to pull Burley away from Officer Jarvie's
grip. *See* Ex. 2, Jarvie BWC 3:20–3:41; Ex. 3, Seward BWC 04:13–04:30.; Exhibit 4,
Declaration of Officer Joshua Jarvie (Jarvie Decl.) ¶ 8.

_**Disputed:**_  Review of the police camera footage shows Ms. Paylor is observing the police
arrest people and took out her cell phone to record the events. *See Def.* Ex. 2, *Jarvie BWC
2:58–3:09;* She is not involved in the events pertaining to the officers or the people the
officers appeared to want to arrest. She was recording the officers' actions. *See Def
Ex. 2, Jarvie BWC 2:57-3:07. Pl. Ex. 1 Declaration of Shadonie Paylor (Paylor Decl*.)  ¶ 5
The video cited by the defendants *(Def Ex. 2, Jarvie BWC 3:20–3:41)* does not show that
Ms. Paylor pulled officer Jarvie's arm or that she tried to pull Burley away from his grip.

Paylor did not pull Officer Jarvie's arm or do anything to prevent Officer Jarvie from handcuffing Burley. *Paylor Decl.* ¶ 8.

4.      Officer Jarvie and Officer Seward walked Burley away from the crowd of people to the police car and the crowd of people, including Paylor, followed them. *See* Ex. 2, Jarvie BWC 3:41–3:55; Ex. 3, Seward BWC 04:30–04:44; Ex. 4, Jarvie Decl. ¶ 9.

**Undisputed**

5.      As the crowd surrounded the car, Officer Seward and Officer Demeritt extended their arms out and told the crowd, including Paylor, to back up. *See* Ex. 2, Jarvie BWC 3:55– 4:05; Ex. 3, Seward BWC 04:50–04:59; Exhibit 5, Officer Caleb Demeritt Body Worn Camera Footage (Demeritt BWC) 04:42–04:44**.**

 **Disputed:**

6.      To control the crowd and create distance between the arrestees and the officers, Officer Demeritt and Officer Seward repeatedly told Paylor and the other individuals to back up. Ex. 5, Demeritt BWC 5:11–5:30; Ex. 3, Seward BWC 05:23–05:25; Exhibit 6, Declaration of Officer Demeritt (Demeritt Decl.) ¶ 9; Exhibit 7, Declaration of Officer Seward (Seward Decl.) ¶ 11. **Undisputed**

7.      Officer Seward advised the crowd, including Paylor, "if you cross this line, you will be placed under arrest." Ex. 3, Seward BWC 05:33–05:34.; Ex. 7, Seward Decl. ¶ 13. **Undisputed**

8.      Officer Demeritt pointed to the ground where he was standing and informed Paylor and the other individuals in the crowd "do not cross this line," and told them while

pointing to the pavement "this is a police line." Ex. 5, Demeritt BWC 5:30–5:34.; Ex. 6, Demeritt Decl. ¶ 10. **<u>Undisputed</u>**

9.      Paylor then walked towards Officer Demeritt and, after Officer Demeritt told Paylor to back up and informed her of the police line, Paylor responded, "this ain't no police line" and walked past Officer Demeritt.  Ex. 5, Demeritt BWC 5:50–6:06; Ex. 6, Demeritt Decl. ¶ 10.

**<u>Disputed:</u>** Ms. Paylor did not walk past Officer Demeritt and did not cross a police line. The video footage reference by the defendants, *Demeritt BWC 5:50–6:06*; shows that she did back up when requested. She was simply recording the officers.  Police officer Demeritt told Paylor, and the other onlookers, to not cross the police line, so Paylor stepped back. Police officer Demeritt simply pointed to the ground and said this is a police line, back up. Paylor backed up.  She continued to record the officers' actions with her cell phone. *Defendant's declaration acknowledges that she backed up. See Def Ex. 7, Seward Decl. ¶ 10.* ("told the crowds including Paylor to back up, and the individuals then backed up"); *Def Demeritt Decl. ¶ 8.* ("told the crowds including Paylor to back up, and the individuals then backed up"); *Paylor Decl.  ¶ 11-12*

10.      As Paylor walked past Officer Demeritt, Officer Demeritt advised Paylor to not cross the police line and to back up. *Ex. 5, Demeritt BWC 6:05–6:17; Ex. 6, Demeritt Decl. ¶ 10.*

**<u>Disputed</u>**: Ms. Paylor did not walk past Officer Demeritt and did not cross a police line. The video footage reference by the defendants, *Demeritt BWC 5:50–6:06*; shows that she did back up when requested. She was simply recording the officers.  She did not cross the

police line at any time. *Defendant's declaration acknowledges that she backed up. See Def Ex. 7, Seward Decl. ¶ 10.* ("told the crowds including Paylor to back up, and the individuals then backed up"); *Def Demeritt Decl. ¶ 8.* ("told the crowds including Paylor to back up, and the individuals then backed up"). *Paylor Decl. ¶ 11-12; Pl Ex. 2 (Photo of Jarvie BWC 3:07).*

11.     As Officer Demeritt walked back to the police car, Paylor and other members of the crowd followed Demeritt, and Officer Demeritt once again told the crowd, including Paylor, to back up and stated, "this is a police line." *Ex. 5, Demeritt BWC 6:33–6:40; Ex. 6, Demeritt Decl. ¶ 12*. **<u>Undisputed</u>**

12.     As Officer Seward walked toward Officer Demeritt, Officer Seward pointed at Paylor and asked Officer Demeritt "is she going?" and Officer Demeritt replied, "yeah she is going." Ex. 3, Seward BWC 06:39–06:44; Ex. 5, Demeritt BWC 06:39–06:42; Ex. 6, Demeritt Decl. ¶¶ 13-14; Ex. 7, Seward Decl. ¶ 15.

**<u>Disputed</u>**:  When Officer Seward pointed at Paylor and asked Officer Demeritt "is she going?" Paylor was several yards distance from officers Demeritt and Seward. She was not close to any police line or officer when Police Officer Seward, with mace in hand, ran towards Paylor and the others.  *See Pl Ex. 1 Paylor Decl. ¶ 11-12.*

13.     Officer Seward then advanced to arrest Paylor and Paylor ran away from Officer Seward. Ex. 3, Seward BWC 06:44–06:50; Ex. 5, Demeritt BWC 06:42–06:49.; Ex. 7, Seward Decl. ¶ 17.

 **<u>Disputed</u>**: Officer Seward ran toward Paylor and a crowd of people, with a can of mase in his hand, Paylor started to run, afraid for her life.  Before chasing Paylor, officer

Seward maced Monica Watts, another onlooker. Officer Seward maced others as well. Paylor's sister, Ashanti Paylor was maced. Pl Ex. 3, Paylor Deposition, 29:4-7; Paylor Decl. ¶ 14; Def. Ex. 8, Smith BWC Footage 01:30–01:40.

14.     Officer Seward ran after Paylor and grabbed her to prevent her from running and Paylor struck Officer Seward in the face. Ex. 3, Seward BWC 06:44–06:50; Ex. 7, Seward Decl. ¶ 18.; Ex. 6, Demeritt Decl. ¶ 16.

**Disputed:**  Paylor denies striking Officer Seward in the face. The defendants' exhibit, *Seward BWC 06:44–06:50*, lacks any evidence showing Paylor striking Officer Seward. *See Pl Ex. 1 Paylor Decl. ¶ 11-12*

15. Officer Seward then struck Paylor to stop her from hitting him.  Ex. 3, Seward BWC   06:44–06:50; Ex. 7, Seward Decl. ¶ 19.

**Disputed:** Paylor denies striking Officer Seward in the face. The defendants' exhibit, *Seward BWC 06:44–06:50*, lacks any evidence showing Paylor striking Officer Seward. *See also Pl Ex. 1 Paylor Decl. ¶ 15*

16. Officer Seward and Paylor struggled before Officer Demeritt intervened and performed a takedown on Paylor.  *Def. Ex. 3, Seward 06:49–06:54; Ex. 7, Seward Decl. ¶ 20; Ex. 6, Demeritt Decl. ¶ 17*.  **Undisputed**

17. While on the ground, Officer Demeritt attempted to handcuff Paylor and Paylor resisted and pulled her hands away from Officer Demeritt to avoid being handcuffed while telling Officer Demeritt to "get the fuckoff of me*!" Exhibit 8, Lieutenant Dion*

*Smith (Smith) Body Worn Camera (BWC) Footage 01:30–01:40; Ex. 3, Seward BWC*

*7:01–07:06. Ex. 6, Demeritt Decl. ¶ 18. Ex. 7, Seward Decl. ¶ 21.*

**Disputed**:  Ater being punched in the face by Officer Seward, and tackled by Officer

Demerritt, Paylor was on the ground with the officers on top of her and in pain.

Paylor kept telling the officer to let her go. She screamed "get the fuckoff of me!" The

officers didn't do anything but cause  her more pain. *Pl Ex. 3, Paylor Deposition, 30:4-7;*

*Pl Decl. ¶ 18.*

18. Officer Demeritt and Officer Seward then advised Paylor to "stop resisting," placed

her hands behind her back, and handcuffed her.  Ex. 3, Seward BWC 7:08–7:16; Exhibit

9, Officer Beritta Willis Body Worn Camera (BWC) Footage 04:28–04:43. Ex. 6,

Demeritt Decl. ¶ 19; Ex. 7, Seward Decl. ¶ 22. **Undisputed.**

19. Once Paylor was handcuffed, the officers picked her up from the ground and walked

her to the police car.  Ex. 9, Willis BWC Footage 04:45–05:32; Ex. 3, Seward BWC

8:06– 8:09.; Ex. 6, Demeritt Decl. ¶ 20.; Ex. 7, Seward Decl. ¶ 23. **Undisputed**

20. During Paylor's arrest, Officer Jarvie was detaining Burley and he was not involved

in the arrest or handcuffing of Paylor.  Ex. 2, Jarvie BWC 06:55–07:01; Ex. 3, Seward

BWC 7:08–7:16; Ex. 4, Jarvie Decl. ¶ 9; Ex. 8, Smith BWC Footage 01:30–01:40.

**Undisputed.**

21. Paylor was transported to Seventh District for processing and charged with

"Resisting Arrest," "Assault on a Police Officer," and "Crossing a Police Line." Ex. 1

**Undisputed**

Date:  January 5, 2024

Respectfully submitted,

LAW OFFICE OF LAWRENCE MANLEY &
ASSOCIATES

  /S/ Lawrence Manley_____
2026 32nd Street, SE, Bar # 379702
Washington, DC 20020
(202) 256-4524- Fax: 240-414-1120
lmanley@lmanleylaw.com
counsel to Shadonie Paylor

11

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHADONIE PAYLOR, | |
| **Plaintiff,** | |
| v. | **No. 1:22-cv-03359 (JEB)** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

<u>MEMORANDUM OF POINTS AND AUTHORITIES IN <u>SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u></u>

**INTRODUCTION**

This case stems from the arrest of Shadonie Paylor on August 20, 2019. Ms. Paylor brings claims under 42 U.S.C. § 1983 against Defendants Metropolitan Police Department (MPD) Officers Caleb Demeritt, Joshua Jarvie, and Corbin Seward based on their use of excessive force, in arresting her in violation of the Fourth Amendment.

Plaintiff agrees that Officer Joshua Jarvie is entitled to summary judgment because there is no evidence that Jarvie was the arresting officer or involved in Plaintiff's arrest. Plaintiff's excessive force claims against Officer Seward and Officer Demeritt are justified and supported by the facts. Officer Seward and Officer Demeritt did use excessive force against Paylor in violation of her constitutional rights. The facts show that Paylor was recording the officers' actions from a reasonable distance and complied when asked to step back from the police line *Paylor Decl.* ¶ 4.

Despite Paylor's compliance, the officers escalated the situation by chasing Paylor, punching her in the eye with a closed fist, tackling her to the ground, and putting a foot on her neck while she was down *Paylor Decl.  ¶ 13-17*. Paylor required medical treatment, *See Pl. Exhibit 4 and Exhibit 5* (photo of Paylor), incurred medical bills, *See Pl. exhibit* 65 and will continue to suffer limited vision in her left eye due to her injuries sustained by Officer Seward and Officer Demeritt. *See,* Pl; *Pl Ex. 3, Paylor Deposition, 30:4-7; Pl Decl. ¶ 16-18.*

This amount of force was clearly excessive given that Paylor did not physically threaten or resist the officers. *Hudson v. District of Columbia, 517 F. Supp. 2d 40.* Moreover, the evidence shows that the police video camera footage offered to support Defendant's Statement of Material Facts for Which There Is No Genuine Dispute (DSMF), as evidence in this case, fails to support the Defendant's position that Paylor touched, hit, punched, or physically assaulted any of the Defendants prior to her arrest on August 20, 2019.  Moreover, the evidence shows that the police video camera footage offered as evidence in this case fails to support the Defendant's position that Paylor crossed a police line. Finally, Officer Seward and Officer DeMeritt's conduct did violate clearly established law and they are therefore not entitled to qualified immunity.  For these reasons, the Court should deny summary judgment in Defendants' favor.

## FACTS

On Tuesday, August 20, 2019, Shadonie Paylor was in Woodland Terrance Community waiting to pick up her three children from Rocketship Charter Elementary School. *Paylor Decl. ¶ 2.*  Review of the police camera footage shows Ms. Paylor observing the police arrest people when she took out her cell phone to record the events. She is not involved in the events pertaining to the officers or the people the officers appeared to want to arrest. She was recording the officers' actions. *See Def* Ex. 2, Jarvie BWC 2:57-3:07. *Pl. Ex. 1 Declaration of Shadonie Paylor (Paylor*

2

*Decl.*) ¶ 3- 5.; *Pl Ex. 2 (Photo of Jarvie BWC 3:07)*. The video cited by the defendants *(Def Ex. 2, Jarvie BWC 3:20–3:41)* does not show that Ms. Paylor pulled officer Jarvie's arm or that she tried to pull Burley away from his grip. Paylor did not pull Officer Jarvie's arm or do anything to prevent Officer Jarvie from handcuffing Burley.  *Paylor Decl.*  ¶ 8.

Ms. Paylor did not walk past Officer Demeritt and did not cross a police line. *Paylor Decl.* ¶ *10-11*. The video footage reference by the defendants, *Demeritt BWC 5:50–6:06*; shows that she did back up when requested. She was simply recording the officers.  Police officer Demeritt told Paylor, and the other onlookers, to not cross the police line, so Paylor stepped back. She never crossed the police line. Police officer Demeritt simply pointed to the ground and said this is a police line, back up. So, Paylor backed up.  She continued to record the officers' actions with her cell phone. She did not cross the police line at any time.  *Defendant's declaration acknowledges that she backed up. See Def Ex. 7, Seward Decl. ¶ 10.* ("told the crowds including Paylor to back up, and the individuals then backed up"); *Def Demeritt Decl. ¶ 8.* ("told the crowds including Paylor to back up, and the individuals then backed up"); *Paylor Decl.*  ¶ *10-11*.

When Officer Seward pointed at Paylor and asked Officer Demeritt "is she going?" Paylor was several yards distance away, several yards behind the police line and from Officer Demeritt. Police Officer Seward, with mace in his hand, ran towards Paylor and the others.  *See Pl Ex. 1 Paylor Decl.  ¶ 12.*

 Officer Seward ran toward Paylor and a crowd of people, with a can of mase in his hand, Paylor started to run, afraid for her life.  Before chasing Paylor, officer Seward maced Monica Watts, another onlooker. Officer Seward maced others as well.  Paylor's sister, Ashanti Paylor, was maced. *Pl Ex. 3, Paylor Deposition, 29:4-7; Paylor Decl. ¶ 14; Def. Ex. 8, Smith BWC Footage 01:30–01:40.* Paylor denies striking Officer Seward in the face. The defendants' exhibit, *Seward*

3

*BWC 06:44–06:50*, lacks any evidence showing Paylor striking Officer Seward.  *See Pl Ex. 1 Paylor Decl.  ¶ 13-15.*

After being punched in the face by Officer Seward, and tackled by Officer Demerritt, Paylor was on the ground with the officers on top of her and in pain. Paylor kept telling the officer to let her go. The officers didn't do anything but cause her more pain. *Pl Ex. 3, Paylor Deposition, 30:4-7; Pl Decl. ¶ 17.*

On Tuesday, August 20, 2019, at approximately 12:50, Paylor was assaulted and viciously attacked, without provocation or legal cause, by DC Metropolitan Police Officers, Caleb Demeritt3 and, Corbin Seward- badge number 5467.  Paylor was arrested, and charged with resisting arrest, assault on a police officer, and crossing a police line. The charges were subsequently dropped or not prosecuted. *Paylor Decl.  ¶ 18-20*

Paylor required medical treatment, *See Pl. Exhibit 4 and Exhibit 5* (photo of Paylor), incurred medical bills, *See Pl. exhibit* 6 and suffered limited vision in her left eye due to her injuries sustained by Officer Seward and Officer Demeritt. *See,* Pl; *Pl Ex. 3, Paylor Deposition, 30:4-7; Pl Decl. ¶ 18.*

## GOVERNING LAW

Summary judgment is proper when there is no genuine issue as to any material fact. The role of the court is not to act as fact finder and to resolve factual issues, but rather to see if the record demonstrates that there is no genuine issue of material fact on which a jury could find for the non-moving party. The moving party has the burden of clearly demonstrating the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law. The party opposing summary judgment is entitled to the benefit of all favorable inferences that can be drawn from the evidence. *Holland v. Hannan*, 456 A. 2d 807 (D.C. 1983).

In *Jackson v. District of Columbia, DC District Court|83 F. Supp. 3d 158|Mar 17, 2015|U.S. Federal,* the court held, "[A] defendant's motion for summary judgment on a § 1983 excessive force claim "is to be denied only when, viewing the facts in the record and all reasonable inferences derived therefrom in the light most favorable to the plaintiff, a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions*." Wardlaw*, 1 F.3d at 1303 (citing *Martin v. Malhoyt*, 830 F.2d 237, 253—54, 265 U.S. App. D.C. 89 (D.C. Cir. 1987)); see also *Oberwetter v. Hilliard*, 639 F.3d 545, 555, 395 U.S. App. D.C. 52 (D.C. Cir. 2011) (quoting *Wardlaw*, 1 F.3d at 1303).

In evaluating an excessive force claim, courts consider factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight. <u>Johnson v. District of Columbia</u>  490 F. Supp. 3d 144, Sep 30, 2020; see also In <u>Cooper v. D.C.</u>, 548 F. Supp. 3d 170, Jul 9, 2021, the court considered the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. The court denied summary judgment on the excessive force claim because the use of violence on an already subdued suspect was generally impermissible.

To defeat summary judgment, the plaintiff must present sufficient evidence to show the officers' actions were objectively unreasonable in the circumstances. The court must also consider the facts in the record and all reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Armbruster v. Frost, DC District Cour, 962 F. Supp. 2d 105, U.S. Federal*.

A defendant's motion for summary judgment is to be denied only when a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could

have believed in the lawfulness of his actions.  *Bushrod v. D.C.*, *521 F. Supp. 3d 1 | Feb 22, 2021.*

If the record does not conclusively establish the lawfulness of an officer's use of force, summary

judgment based on qualified immunity is inappropriate <u>Egudu *v. District of Columbia,*</u> *72 F.*

*Supp. 3d 34, Oct 29, 2014.*

## ARGUMENT

## I.     <u>Officer Joshua Jarvie Is Entitled to Summary Judgment.</u>

The Plaintiff agrees that Officer Jarvie is entitled to summary judgment because there is

no evidence that he was involved in the arrest of Plaintiff or used any force against her.   *See,*

*Cooper v. D.C.* 548 F. Supp. 3d 170.

## II.    <u>Officers Seward and Demeritt are Not Entitled to Summary Judgment Because Their</u> <u>Use of Force was Not Objectively Reasonable Under the Circumstances.</u>

The key issues in this case are whether Officers Seward and Demeritt used excessive force against

Ms. Paylor, a bystander and whether they had lawful justification to arrest her. The charges against

Paylor for resisting arrest and assaulting an officer were dropped, undermining the officers' claims

that she assaulted an officer, crossed a police line, or resisted *Paylor Decl. ¶ 20.*  Paylor's actions in

recording the arrests and backing away when told to do so did not constitute resistance or

obstruction justifying the officers' use of force  <u>*Wood v. District of Columbia* ,</u> *2017 U.S. Dist.*

*LEXIS 82876, May 31, 2017.* Rather, the extent of Paylor's injuries and the officers' clearly

disproportionate response show that the officers' actions were an unreasonable and excessive use of

force. Paylor required medical treatment, *See Pl. Exhibit 4AND 5* (photo of Paylor), incurred

medical bills, *See Pl. exhibit* 6 and has suffered limited vision in her left eye due to her injuries

sustained by Officer Seward and Officer Demeritt. *See, Pl Ex. 3, Paylor Deposition, 30:4-7; Pl*

*Decl. ¶ 18.*

Plaintiff categorically denies Defendant's allegation that Plaintiff assaulted two officers, interfered with an arrest of a third-party individual, repeatedly refused to comply with police orders to stay behind a police line, attempted to evade arrest by fleeing the scene, and physically resisted her arrest, which defendants claim is captured in video to support the officers unlawful excessive force under the Fourth Amendment. *see DSMF ¶ 3, 9 and 14.*

The facts show that Ms. Paylor was recording police activity when an officer Demeritt created a police line by pointing at the ground. She was then chased, punched in the face, body tackled, and arrested on charges of assaulting an officer, crossing the police line, and resisting arrest. All charges were dismissed. *Paylor Decl. ¶ 4, 11-14,*

While police may use reasonable force to effect an arrest, the force described here appears excessive given the lack of active resistance by the bystander *Katz v. District of Columbia,. 285 A.3d 1289 | Dec 15, 2022 |,* Punching her in the eye and body tackling her to the ground after she was accused of merely crossing a police line constitutes excessive force absent any aggressive actions on her part *District of Columbia v. Bamidele. 103 A.3d 516, Nov 13, 2014.*

Furthermore, the arrest seems questionable since she had a legal right to record police activity from a reasonable distance as a bystander. Even if she inadvertently crossed the police line, that minor infraction would not justify the level of force used or her arrest on charges of assaulting an officer and resisting arrest, The facts indicate the officers lacked probable cause for the arrest and used excessive force to subdue a cooperative bystander. Therefore, Ms. Paylor, a bystander, has strong grounds to assert police excessive force claims.

The excessive force element of the Fourth Amendment is presented in this case. Ms. Paylor, a bystander, who was recording police activity, was punched in the face by officer Seward and body tackled by officer Demeritt before being arrested, and continued to suffer injuries during the

arrest, this constitutes excessive force in violation of the Fourth Amendment. It is clearly established that force used during an arrest is excessive, and that a police officer violates the Fourth Amendment by using excessive force against a citizen who was simply recording police activity. Here Ms. Paylor was punched in the face and tackled despite not resisting arrest or posing any apparent threat to officer safety. This use of force against a non-threatening and non-resisting individual violates the Fourth Amendment. Additionally, it is clearly established that the Fourth Amendment prohibits the beating of a suspect who is simply recording the police. By chasing, punching, and body tackling an innocent bystander to the ground and then while on the ground to continue to hit and kick her in her face, the officer subjected Ms. Paylor to excessive beating in violation of the Fourth Amendment. Finally, it is clearly established that the repeated use of force against a subdued and non-resisting individual constitutes excessive force in violation of the Fourth Amendment. In sum, punching Paylor in the face and tackling a bystander who was recording police activity constituted excessive force in violation of the clearly established Fourth Amendment rights of the Ms. Paylor.

### III    Police video footage to support Defendant's motion for summary judgment fails to show what is alleged in police officer's declaration and material facts

Review of the police camera footage shows Ms. Paylor is observing the police arrest people. and took out her cell phone to record the events. She is not involved in the events pertaining to the officers or the people the officers appeared to want to arrest. She was recording the officers' actions. *See Def* Ex. 2, Jarvie BWC 2:57-3:07. *Pl. Ex. 1 Declaration of Shadonie Paylor (Paylor Decl.)* ¶4; *Pl Ex. 2 (Photo of Jarvie BWC 3:07).*

The video cited by the defendants *(Def Ex. 2, Jarvie BWC 3:20–3:41)* does not show that Ms. Paylor pulled officer Jarvie's arm or that she tried to pull Burley away from his grip. *Paylor Decl.* ¶ 7-8. Defendant's undisputed material facts does not demonstrate that Officers Seward and

Officer Demeritt before using force against Plaintiff that Plaintiff had pulled Officer Jarvie's arm to prevent him from handcuffing Burley and tried to pull Burley away from Officer Jarvie's grip, *see DSMF ¶ 3,*

Video footage can be a crucial piece of evidence in a motion for summary judgment. However, its admissibility can be challenged if it fails to corroborate the allegations made in a police officer's declaration. The D.C. Circuit case, *Johnson v. District of Columbia*, highlights the importance of clarity in video evidence. In that case, the video evidence was deemed insufficient due to its lack of clarity in resolving disputed facts *Johnson v. District of Columbia.*

Here, the parties dispute what occurred immediately before Officer Seward chased and punched Paylor in the face. Defendants assert that Plaintiff pulled Officer Jarvie's arm to prevent him from handcuffing Burley and tried to pull Burley away from Officer Jarvie's grip*, see DSMF ¶ 3,* and that she crossed a police line before the use of force. See Defs.' Stmt. ¶ 9; and that she punched Officer Seward in the face. *See Defs.' Stmt. ¶ 14.* Plaintiff, however, flatly denies these assertions, *see Pl.'s disputed material facts ¶ 3, 9 and 14*, and instead declares that she did not pull officer Jarvie's arm or tried to pull Burley away from his grip, or strike officer Seward in the face. The entire sequence of events surrounding Plaintiff's alleged assaulting a police office is captured on video, but even a close review of the footage does not clearly demonstrate whether the punching or touching action alleged by Officers Seward and Jarvie and Demeritt did or did not occur. These fact remains in dispute.

Here, the police video footage fails to corroborate the allegations made in the police officer's declaration.  Moreover,  the officers declarations appear to contradicts the video, therefore, the video evidence is insufficient due to its lack of clarity in resolving disputed facts *Johnson v. District of Columbia..*

The police video camera footage offered as evidence in this case should not be relied upon because it fails to support the police position. The police video footage, like other evidence, must meet certain foundational requirements to be admissible. This includes authentication - showing that the video is a fair and accurate representation of the events depicted. Here, the police video fails this requirement because it does not support the police's version of events. The police cannot rely on video evidence that undermines their own account. When video contradicts the police narrative, it casts doubt on the officers' reliability, veracity, and accuracy. The proper foundation is lacking if the video's contents differ from the officers' declarations.

## IV.   <u>Officer Seward and Officer Demeritt Are Not Entitled to Qualified Immunity.</u>

Officers Seward and Demeritt are not entitled to qualified immunity because it was clearly established that the level of force that they used to arrest Plaintiff, who was simply recording the officers, under these circumstances, amounted to a Fourth Amendment violation.

The officers used excessive force against Paylor in violation of her constitutional rights. The facts show that Paylor was recording the officers' actions from a reasonable distance and complied when asked to step back from the police line *Paylor Decl.  ¶ 4, 10-12*. Despite Paylor's compliance, the officers escalated the situation by pushing Paylor, chasing her, punching her, tackling her to the ground, and continuing to attack her while she was down *Id*. This amount of force was clearly excessive given that Paylor did not physically threaten or resist the officers. *Paylor Decl. ¶ 12*.

Courts have found the use of force to be excessive in similar situations where a suspect posed no threat and did not actively resist arrest. In <u>Oberwetter v. Hilliard,</u> 680 F. Supp. 2d 152| Jan 25, 2010, an officer was found to have used excessive force when he shoved a woman against a pillar for refusing to stop dancing and questioning his authority  <u>Hedgpeth v. Rahim,</u>  893 F.3d 802, the court ruled that officers used excessive force by tackling a suspect to the ground when he

10

briefly hesitated before complying with orders during an investigatory stop. In *Hudson v. District of Columbia,* 517 F. Supp. 2d 40, "...The jury reasonably concluded that the arrestee did not forcibly resist arrest under D.C. Code § 22-405(b). The officers were not qualifiedly immune because they violated the Fourth Amendment by using excessive force to seize the arrestee, who was a bystander to the dispute. Officers Seward and Demerritt's conduct was objectively unreasonable under the Fourth Amendment, the facts, construed in her favor, demonstrate an objectively unreasonable seizure.

Accordingly, The Plaintiff agrees that Officer Jarvie is entitled to summary judgment because there is no evidence that he was involved in the arrest of Plaintiff or used any force against her. Officers Demerit and Seward are not entitled to qualified immunity, and The Court should, as a result, deny summary judgment in favor of the Defendant officers.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion for summary judgment.

Date:  January 5, 2024

Respectfully submitted,

LAW OFFICE OF LAWRENCE MANLEY &
ASSOCIATES

_/s/ Lawrence Manley_____
2026 32nd Street, SE, Bar # 379702
Washington, DC 20020
(202) 256-4524  Fax: 240-414-1120
lmanley@lmanleylaw.com
counsel to Shadonie Paylor

11

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHADONIE PAYLOR,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:22-cv-03359 (JEB)** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

**ORDER**

Upon consideration of Defendants' Motion for Summary Judgment, any opposition and reply thereto, and the entire record, it is by the Court this _____ day of _____ 2024, hereby,

**ORDERED** that Defendants' Motion is **GRANTED** for Officer Joshua Jarvie, and it is further,

**ORDERED** that Defendants' Motion is **DENIED** for Officer Caleb Demeritt and Officer Corbin Seward; and it is,

**SO ORDERED**.

_____
JAMES E. BOASBERG
United States Chief District Judge